UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| PAISANO CAPITAL SA DE CV D/B/A | § | |
| PRODUCTOS PAISANO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-078 |
| | § | |
| ALFREDO  VELAZQUEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers the "Second Motion for Entry of Default Judgment and Incorporated Memorandum of Law"[1] (hereafter, "motion for default judgment") and the First Amended Complaint[2] (hereafter, "amended complaint") filed by Paisano Capital SA de CV d/b/a Productos Paisano ("Plaintiff") against Defendants Luimon Produce, LLC ("Defendant Luimon") and Alfredo S. Velazquez ("Defendant Alfredo Velazquez") (collectively, "Defendants").[3] Defendants have not responded. Because Defendants have not appeared or responded to Plaintiff's first motion for entry of default judgment,[4] the Court utilizes its discretion to consider the motion now.  After duly considering the motion, record, and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment.

---

[1] Dkt. No. 25.
[2] Dkt. No. 24.
[3] Defendant Sebastian Velazquez has not been served. Thus, Plaintiff has filed the instant motion against only Defendant Luimon and Defendant Alfredo Velazquez.
[4] Dkt. No. 20.

# I.  BACKGROUND

Plaintiff brings this suit under the Perishable Agricultural Commodities Act, 1930 ("PACA") against Defendant Luimon, Defendant Alfredo Velazquez, and Defendant Sebastian Velazquez for breach of a series of produce contracts.[5] Plaintiff is a "dealer," or a wholesaler of perishable agricultural commodities expressly recognized under PACA, with its principal place of business in Colonia Escandon, Mexico.[6] Defendant Luimon is a Texas LLC and is both a "dealer" and "shipper" under PACA that allegedly buys and sells produce in interstate and foreign commerce.[7] Defendants Alfredo Velazquez and Sebastian Velazquez are Texas residents who were employed by Defendant Luimon as managing members.[8]

In essence, Plaintiff now seeks to recover $92,532.69, the amount unpaid by Defendants on seventeen 2017 "contracts" for lemons initially between Defendants and Carlos Alberto Andrade Machuca ("Machuca") and his company, Agropecuaria Tepanapa SC de RL de CV ("Tepanapa") (collectively, "Assignors"), who have not been named in this case.[9] Plaintiff alleges Assignors assigned Plaintiff their rights to the unpaid produce invoices on June 11, 2018. Plaintiff often refers to these seventeen "contracts" in its complaint, but does not attach any

---

[5] Dkt. No. 1 p. 1.
[6] *Id.* at p. 1, ¶¶ 1–4.
[7] *Id.* at pp. 2–4, ¶¶ 5, 9.
[8] Dkt. No. 1-1 pp. 3, 5, 8. More specifically, Plaintiff alleges that Defendant Alfredo Velazquez "acts as president of [Defendant] Luimon," "is listed as [Defendant] Luimon's organizer and managing member and registered agent on the business organizations database on the Texas Secretary of State website," "and was listed as a principal on [Defendant] Luimon's PACA license." Dkt. No. 1 p. 3, ¶ 5(b)(i–iii) (citing Dkt. No. 1-1 pp. 2–6). Plaintiff alleges Defendant Sebastian Velazquez "acted as Assistant Produce Manager of [Defendant] Luimon," and "is listed as a member of [Defendant] Luimon on [Defendant] Luimon's Texas Franchise Tax Public Information Report." *Id.* at p. 4, ¶ 5(c)(i–ii) (citing Dkt. No. 1-1 pp. 6–9).
[9] In the instant motion for default judgment, Plaintiff requests the Court award it $92,532.69, the amount that remains unpaid on the seventeen contracts, or invoices, reached between Defendants and Assignors, plus interest and attorneys' fees and costs. Dkt. No. 25 p. 4, ¶ 13. However, Plaintiff requests in its complaint that the Court award it $162,385.19 based on the amount owed by Defendants on the invoices, plus interest and attorneys' fees. Dkt. No. 1 p. 6, ¶ 23. Plaintiff does not specify in its complaint the principal amount owed by Defendants under the invoices. The Court notes that Plaintiff has requested different amounts in each of its pleadings.

exhibits detailing the contracts, the rights of which were allegedly assigned to Plaintiff.[10] Rather, Plaintiff attached to its complaint two "Assignment Agreement[s]" reached between Plaintiff and each Assignor.[11]

Plaintiff filed its complaint in this Court[12] on the grounds that this Court has federal question jurisdiction over the PACA claims and supplemental jurisdiction over the remaining claims.[13] Plaintiff brings several claims jointly and separately against Defendants. Plaintiff brings three PACA claims against all Defendants: (1) failure to make full payment promptly; (2) making false or misleading statements; and (3) breach of good faith and fair dealing.[14] Plaintiff also brings a claim against all Defendants for conspiracy to defraud.[15] Plaintiff brings a separate claim against Defendant Luimon for breach of contract.[16] Plaintiff brings claims against Defendants Alfredo Velazquez and Sebastian Velazquez for breach of fiduciary duty to creditors, and aiding and abetting Defendant Luimon's breach of fiduciary duty under PACA.[17] Plaintiff brings separate claims against Defendants Alfredo Velazquez and Sebastian Velazquez for "alter ego, single enterprise liability."[18] Although Plaintiff brings the aforementioned claims, Plaintiff

---

[10] Plaintiff often cites to "Exhibit D" as the list of produce contracts in its description of the facts but fails to attach Exhibit D to the complaint. Furthermore, Plaintiff also cites to "Exhibit E," the Assignment Agreement reached between Assignors and Plaintiff. However, Plaintiff's Assignment Agreements refer to the details of the original contracts between Defendant Luimon and Assignors as "Exhibit A" to the Assignment Agreement. Plaintiff failed to attach Exhibit A to allow this Court to see the details of the contracts for produce reached between Assignors and Defendant Luimon. This Exhibit A should be distinguished from the Exhibit A attached to the complaint. Plaintiff has attached Exhibit A to its complaint but has not attached the Exhibit A spoken of in the Assignment Agreements.
[11] Dkt. No. 1-1 pp. 12–17.
[12] *See* Dkt. No. 1.
[13] *Id.* at p. 5, ¶¶ 18–19.
[14] *Id.* at pp. 10–17 (Counts I–III).
[15] *Id.* at pp. 24–25 (Count VIII).
[16] *Id.* at pp. 17–18 (Count IV).
[17] *Id.* at pp. 18–20 (Count V); pp. 24–25 (Count VIII). Plaintiff does not appear to bring a specific breach of fiduciary duty claim against Defendant Luimon but alleges that Defendants Alfredo Velazquez and Sebastian Velazquez aided and abetted Defendant Luimon's breach of fiduciary duty under PACA.
[18] *Id.* at pp. 20–24 (Count VI–VII).

seeks only the amount owed on the invoices as damages, plus interests, costs, and attorneys' fees.[19]

Defendant Luimon and Defendant Alfredo Velazquez have been served but have not yet appeared.[20] On July 15, 2019, Plaintiff moved for entry of default as to both served Defendants and the Clerk, by Court order, entered default.[21] Defendant Sebastian Velazquez has yet to be served.

Plaintiff filed its first motion for default judgment on October 1, 2019 as to Defendants Luimon and Alfredo Velazquez.[22] Plaintiff's first motion for default judgment provided a different description of the facts as compared to Plaintiff's original complaint. Specifically, Plaintiff's first motion for default judgment left out all facts relating to the contracts allegedly reached between Defendant Luimon and Assignors, as well as the subsequent Assignment Agreements. Due to Plaintiff's inconsistent recitation of the facts, and the fact that Plaintiff failed to fulfill even one element entitling it to default judgment, this Court denied[23] Plaintiff's first motion for default judgment and subsequently ordered Plaintiff to file an amended motion for default judgment by October 29, 2019.[24]

Plaintiff filed a first amended complaint on October 28, 2019[25] and filed the instant second motion for default judgment as to Defendants Luimon and Alfredo Velazquez on October 29, 2019.[26] Plaintiff again seeks default judgment as to all claims and requests damages, interest, costs, and attorneys' fees, totaling $133,968.97.[27]

---

[19] Dkt. No. 25 p. 4, ¶ 15.
[20] Dkt. Nos. 9–10.
[21] Dkt. Nos. 14–15.
[22] Dkt. No. 20.
[23] Dkt. No. 21.
[24] Dkt. No. 23.
[25] Dkt. No. 24.
[26] Dkt. No. 25.
[27] *Id.* at p. 4, ¶ 15.

The Court now turns to its analysis, first addressing the lack of service on Defendant Sebastian Velazquez.

## II.   SERVICE OF PROCESS ON DEFENDANT SEBASTIAN VELAZQUEZ

As the Court has noted in this Order and previous Orders, Plaintiff has not served Defendant Sebastian Velazquez in this suit, which commenced on March 14, 2019.[28] The manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules of Civil Procedure.[29] After filing a complaint, a plaintiff "must immediately resort to Federal Rule of Civil Procedure ("Rule") 4 for instructions on service of process."[30] Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

The Court noted in its previous Order that Defendant Sebastian Velazquez has yet to be served.[31] Thus, Plaintiff has notice and has not provided any reasoning for its failure to serve all defendants. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Defendant Sebastian Velazquez from the case.

Because Plaintiff's filing of a first amended complaint affects which pleadings should be considered by the Court for the purpose of ruling on the motion for default judgment, the Court now considers Plaintiff's first amended complaint.

## III.   FIRST AMENDED COMPLAINT

Rule 15(a) provides a party the opportunity to amend a pleading once within 21 days after serving the pleading or, if the pleading requires a responsive pleading, 21 days after service

---

[28] Dkt. No. 1.
[29] *See Henderson v. United States*, 517 U.S. 654, 656 (1996).
[30] *Henderson*, 517 U.S. at 669.
[31] Dkt. No. 21 p. 4.

of a responsive pleading or 21 days after service of a Rule 12(b), (e), or (f) motion, whichever is earlier.[32] Otherwise, a party may amend a pleading only with the Court's leave or with the opposing party's written consent.[33]

Here, Plaintiff filed its first amended original complaint more than 21 days after serving its pleading and no responsive pleading or Rule 12(b) motion has been filed.[34] Moreover, Plaintiff did not seek leave of Court and did not obtain the opposing parties' written consent to amend its complaint. Thus, none of the instances warranting amendment as a matter of right are present. Furthermore, Plaintiff obtained entry of default on its original complaint. It cannot obtain judgment based on an amended complaint, especially when the amended complaint has not been served on Defendants. In light of these deficiencies, the Court **STRIKES** Plaintiff's first amended original complaint.[35] Should Plaintiff wish to file an amended complaint in the future, it must either obtain the consent of Defendants or seek leave of this Court. The Court now turns to Plaintiff's second motion for default judgment, but bases the motion on Plaintiff's original complaint.[36]

## IV.     MOTION FOR DEFAULT JUDGMENT

### a.  Cautionary Note

The Court must first address yet another deficiency in Plaintiff's pleadings. Plaintiff brings a total of eleven separate claims against the remaining Defendants.[37] Yet, in Plaintiff's

---

[32] Fed. R. Civ. P. 15(a)(1).

[33] *Id.* 15(a)(2).

[34] *See* Dkt. No. 1 (Plaintiff's original complaint, filed on March 14, 2019); Dkt. No. 25 (Plaintiff's first amended complaint, filed on October 28, 2019). Defendants have not appeared, and no responsive motions or Rule 12(b) motions have been filed in this case.

[35] Dkt. No. 24.

[36] Dkt. No. 25.

[37] Dkt. No. 1 pp. 10–22. As mentioned above, Plaintiff brings three PACA claims against both Defendants: (1) failure to make full payment promptly; (2) making false or misleading statements; and (3) breach of good faith and fair dealing. Plaintiff also brings a claim against both Defendants for conspiracy to defraud. Plaintiff brings a separate claim against Defendant Luimon for breach of contract. Plaintiff brings claims against Defendant Alfredo

first motion for default judgment, Plaintiff did not name the claims it brings against Defendants and certainly did not cite to any evidence fulfilling specific claims. Rather, Plaintiff provided an inaccurate description of the facts and then argued that it is entitled to default judgment solely on the basis that (1) Defendants have not appeared and the Clerk of the Court has entered default; (2) Plaintiff's damages can be readily calculated from the value of each unpaid invoice; and (3) none of the Defendants are minors or incompetent.[38]

In its Order denying Plaintiff's first motion for default judgment, the Court noted that Plaintiff's cited standard for default judgment was incorrect. The Court also outlined for Plaintiff the correct legal standard for default judgment, which requires a party to prove that default judgment is procedurally proper, the party's claims are substantively meritorious, and the requested relief can be determined.[39] The Court then instructed Plaintiff to file its amended motion for default judgment and urged Plaintiff to "attach and cite to all necessary evidence, clarify the factual discrepancies in Plaintiff's previous pleadings, and include an explanation for its calculation of damages."[40]

While Plaintiff's instant motion corrects previously inaccurate factual descriptions of Plaintiff's case, includes English versions of its exhibits, and provides a declaration from Assignors, all other deficiencies present in Plaintiff's first motion for default judgment permeate the instant motion. In fact, it appears Plaintiff copied and pasted its exact argument from its first motion into the instant motion and made no arguments as to procedural properness or substantive merit.

---

Velazquez for breach of fiduciary duty to creditors and aiding and abetting Defendant Luimon's breach of fiduciary duties. Finally, Plaintiff brings a claim against Defendant Alfredo Velazquez for "alter ego, single enterprise liability."

[38] Dkt. No. 20 p. 2.
[39] Dkt. No. 21.
[40] Dkt. No. 23.

This leaves the Court to essentially plead Plaintiff's case for it by outlining the correct legal standard, outlining the elements of each claim, and applying the overall standard for default judgment and the elements of each individual claim to the facts. The Court advises Plaintiff that "Judges are not like pigs, hunting for truffles buried in briefs," and the Court is under no obligation to prove Plaintiff's case for it.[41] Similarly, a Court order is neither a suggestion nor guide for parties to ignore at will. The Court cautions Plaintiff's counsel to apply Court orders to practice.

### b. Legal Standard

The Court will once again outline the standard for default judgment. Obtaining a default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk of Court; and (3) entry of a default judgment.[42] Here, Defendants Luimon and Alfredo Velazquez have defaulted by failing to answer or otherwise appear in this case. Entry of default has already been made against them.[43] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations.[44] Nevertheless, default judgment determinations are left to the sound discretion of the district court.[45] Determining the propriety of default judgment is itself a three-step process.

First, the Court must determine if default judgment is procedurally proper, countenancing six factors:

---

[41] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).
[42] *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).
[43] Dkt. Nos. 14–15
[44] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[45] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.[46]

Second, if default judgment is procedurally proper, the Court must determine whether Plaintiff's claims are substantively meritorious.[47] After all, Defendants' failure to answer or otherwise defend does not validate the particular legal claims levied against them.[48] When analyzing the merits of a claim, the Court may assume the truth of all well-pled allegations in Plaintiff's complaint.[49]

Third, if Plaintiff's claims are meritorious, the Court must determine whether the requested relief is appropriate.[50] In particular, Rule 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[51]

If the Court determines default judgment is appropriate, it must determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing."[52] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[53] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing. The Court now turns to its analysis.

---

[46] *Bieler*, 2013 WL 3283722, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).
[47] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[48] *Id.*
[49] *Id.*
[50] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[51] Fed. R. Civ. P. 54(c).
[52] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).
[53] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).

### c. *Legal Analysis*

#### i. **Procedural Properness**

Plaintiff shows default judgment is procedurally proper for each of its claims, as the record does not reveal any material issue of fact now that Plaintiff has remedied all factual discrepancies. The grounds for default are clearly established—Defendants Luimon and Alfredo Velazquez have not answered or appeared. There is no indication in the record that these failures were somehow made in good faith or otherwise excusable, and for that reason, there is no basis for the Court to believe it would be obligated, upon motion, to vacate default judgment against Defendants as to any claim. Due to Defendants Luimon and Alfredo Velazquez's failure to answer or otherwise appear, default judgment cannot—procedurally speaking—be properly characterized as unduly harsh or prejudicial. For these reasons, default judgment is procedurally proper as to each of Plaintiff's claims against Defendants Luimon and Alfredo Velazquez. The Court must now determine whether Plaintiff's claims are substantively meritorious.

#### ii. **Substantive Merit**

As noted above, Plaintiff bases its suit on a series of produce shipment contracts. Because Defendant Sebastian Velazquez has been dismissed from this action, only Plaintiff's claims against Defendant Luimon and Defendant Alfredo Velazquez remain. Accordingly, the Court will address the substantive merit of Plaintiff's PACA, conspiracy to defraud, and breach of contract claims against Defendant Luimon. The Court will then address the substantive merit of Plaintiff's PACA, conspiracy to defraud, "alter ego, single enterprise liability," breach of fiduciary duty, and aiding and abetting claims against Defendant Alfredo Velazquez.

### a. Claims Against Defendant Luimon

#### i. PACA

Plaintiff brings three PACA claims against Defendant Luimon: (1) failure to make full payment promptly; (2) making false or misleading statements; and (3) breach of good faith and fair dealing.[54] Plaintiff alleges that "Defendants received and accepted . . . not less than six (6) shipments (i.e., truckloads) of Produce,"[55] "failed to object to or reject the shipments,"[56] and "failed to pay or otherwise deliver good funds to Assignors for each of the invoices"[57] within ten days. In support, Plaintiff attaches an email exchange between Defendants and Assignors,[58] and declarations by Assignors[59] and Plaintiff's General Counsel, Luis Camacho.[60] Defendant Luimon and Alfredo Velazquez are unopposed through nonresponse, and as such, do not challenge the provided evidence.

PACA was enacted to promote fair dealing in the sale of fruits and vegetables.[61] Under PACA, it is a violation of federal law for a dealer of perishable commodities to "fail . . . [to] make full payment promptly" to sellers of produce.[62] "Full payment promptly" means payment within ten days after the buyer accepts the produce.[63] Further, PACA requires buyers to hold either the produce or all proceeds or accounts receivable from a subsequent sale of the produce in trust for the benefit of unpaid suppliers until "full payment of the sums owing in connection with

---

[54] Dkt. No. 1 pp. 10–17 (Counts I–III).

[55] *Id.* ¶ 57.

[56] *Id.* ¶ 58.

[57] *Id.* ¶ 60.

[58] Dkt. No. 25-2 pp. 73–76. Defendant Alfredo Velazquez's email address is "alfredov@luimonproduce.com," evidencing his representation of Defendant Luimon.

[59] *Id.* at pp. 1–6, Declaration of Carlos Alberto Andrade Machuca, Individually and on Behalf of Agropecuaria Tepanapa SC De RL DE CV, Exhibit B (Declaration of Assignors).

[60] Dkt. No. 25-1 pp. 2–6, Declaration of Luis Camacho, Exhibit A.

[61] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003).

[62] 7 U.S.C. § 499(b)(4).

[63] *Bocchi Americas Assocs. Inc v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 388 (5th Cir. 2008) (citing See 7 C.F.R. § 46.2(aa)(5)(11)).

such transactions has been received by" the supplier.[64] "The trust automatically arises in favor of a produce seller upon delivery of produce."[65] General principles of trust law govern PACA trusts.[66] Therefore, like other trust assets, a produce seller's interest in a PACA trust is freely assignable to third-parties.[67]

Trust beneficiaries may sue in federal district court to enforce PACA's constructive trust provisions,[68] and to enforce the requirement for prompt payment.[69] PACA imposes a "strict set of requirements on produce sellers seeking to benefit from the law's protections."[70] In order to recover from a PACA trust, an alleged trust beneficiary must demonstrate by a preponderance of the evidence that:

(i) the goods sold were perishable agricultural commodities;
(ii) the purchaser of the perishable agricultural commodities was a commission merchant, a dealer, or broker;
(iii) the transaction occurred in interstate or foreign commerce;
(iv) full payment on the transaction has not been received by the supplier, seller or agent;
(v) the seller or supplier preserved its trust rights by giving written notice to the purchaser; and
(vi) the payment terms did not exceed the maximum amount[71] prescribed by PACA.[72]

---

[64] 7 U.S.C. § 499(e)(c)(2).

[65] *Eddy Produce LLC v. Sutton Fruit & Vegetable Co.*, Civil Action No. 3:12-CV-00316-N, 2012 U.S. Dist. LEXIS 19132, at *5 (N.D. Tex. Feb. 14, 2012) (quoting *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990)).

[66] *Reaves Brokerage Co.*, 336 F.3d at 413 (citing *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997)).

[67] *In re Guarracino*, 575 B.R. 298, 309 (Bankr. D.N.J. 2017). The Fifth Circuit has not directly ruled on the issue of whether the rights under a PACA trust are freely assignable to third-parties. However, district courts in the Fifth Circuit have cited to other Circuit Courts recognizing the applicability of general trust law to PACA claims. *Eddy Produce LLC*, No. 3:12-CV-00316-N at *5 (citing *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990)). Thus, the Court looks to outside Circuit rulings that PACA trust rights are freely assignable, as are other trust assets under the general principles of trust law. *In re Guarracino*, 575 B.R. at 309 (citing *Pacific Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 283–85 (3d Cir. 2006)); Restatement (Third) of Trusts § 51 (2003).

[68] 7 U.S.C. § 499e(c)(5).

[69] *Id.* § 499b(4).

[70] *Bocchi Americas Assocs. Inc. v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 389 (5th Cir. 2008).

[71] *See* 7 U.S.C. § 493(a) ("If any commission merchant, dealer, or broker violates any provision of section 2 [7 USCS § 499b] he shall be liable to the person or persons injured thereby for the full amount of damages (including any handling fee paid by the injured person or persons under section 6(a)(2) [7 USCS § 499f(a)(2)]) sustained in consequence of such violation.").

[72] *In re Spiech Farms, LLC*, 592 B.R. 152, 162 (Bankr. W.D. Mich. 2018) (citing *A & J Produce Corp. v. Chang*, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005) (citations omitted).

"An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the United States Department of Agriculture and the produce dealer,"[73] or provides such notice on its "ordinary and usual billing or invoice statements."[74] To adequately provide notice through invoice statements, PACA requires that the invoice or invoices contain the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.[75]

Here, a PACA trust arose automatically in favor of Assignors after Defendants failed to pay Assignors within ten days of receiving the produce. However, the Court finds that neither Plaintiff nor Assignors provided adequate notice to Defendants in order to preserve the benefits of the PACA trust. Plaintiff cites to no evidence of its filing notice with the Department of Agriculture or Defendants as required by PACA. Moreover, the seventeen invoices attached by Plaintiff do not include the language required to provide adequate notice under PACA.

Plaintiff is well aware of its inability to recover under PACA. Plaintiff brought almost identical PACA claims against another produce dealer and its officers in the United States District Court for the Northern District of Texas.[76] In that case, the Court held Plaintiff did not provide adequate notice under PACA and dismissed all PACA claims against the corporate defendant, including breach of fiduciary duty by the defendant's officers.[77]

---

[73] *Eddy Produce LLC v. Sutton Fruit & Vegetable Co.*, Civil Action No. 3:12-CV-00316-N, 2012 U.S. Dist. LEXIS 19132, at *5 (N.D. Tex. Feb. 14, 2012) (quoting *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990)).
[74] 7 U.S.C. § 499e(c)(4).
[75] *Id.* § 499e(c)(5).
[76] *Paisano Capital SA de CV v. 23 Texas Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *4 (N.D. Tex. July 18, 2019).
[77] *Id.*

When Plaintiff initially filed this case on March 14, 2019,[78] the Northern District had yet to reach its decision. However, the Northern District reached its decision dismissing Plaintiff's PACA claims on July 18, 2019, making it highly likely that Plaintiff's counsel was aware of the deficiency of its PACA claims when Plaintiff filed its first and second motions for default judgment on October 1, 2019 and October 29, 2019.[79] Moreover, Plaintiff attempted to file an amended complaint on October 28, 2019, which again included the PACA claims. While decisions of the Northern District are not legally binding on this Court, Plaintiff knew of PACA's notice requirement and proceeded with its claims despite the fact that it had not provided Defendants with adequate notice. The Court reminds Plaintiff of its obligation under Rule 11 to ensure all representations to the Court are nonfrivolous or warranted by existing law.[80]

Accordingly, Plaintiff has not established its right to recover from the PACA trust. The Court hereby **DENIES** default judgment as to Plaintiff's PACA claims against both Defendant Luimon and Defendant Alfredo Velazquez.

### ii. Conspiracy to Defraud

Plaintiff alleges that Defendant Luimon "willingly and willfully conspired" with Defendant Alfredo Velazquez "to perform the tortious and other wrongful acts and schemes set forth in this Complaint."[81] In support of its allegation that Defendant Luimon conspired to defraud Plaintiff, Plaintiff merely states, "[s]aid conspiracy included, but is not limited to, the methods employed by the [Defendants Alfredo and Sebastian Velazquez] together with [Defendant] Luimon, and each of them, to defraud Plaintiff, to breach certain fiduciary duties,

---

[78] Dkt. No. 1.
[79] *Paisano Capital*, No. 3:19-CV-0852-B at *4 (N.D. Tex. July 18, 2019); *see* Dkt. Nos. 20, 25.
[80] *See* Fed. R. Civ. P. 11(b)(2).
[81] *Id.* at p. 24, ¶ 182.

make false or misleading statements to avoid payment, to misappropriate Plaintiff's money, efforts, and experience, and to conceal their wrongful actions."[82]

To establish a civil conspiracy to defraud, a party "must prove both a civil conspiracy and the underlying fraud."[83] Claims involving fraud require a higher degree of particularity.[84] The Fifth Circuit has held that to prove a conspiracy to defraud, "a party must . . . specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[85]

Plaintiff does not cite to any law regarding this claim and does not specify what "methods" were employed by Defendants in their conspiracy to defraud Plaintiff. Plaintiff has not provided any information regarding any conspiracy it alleges existed between the Defendants, let alone "the statements contended to be fraudulent, [the identity of] the speaker . . . when and where the statements were made . . . [or] why the statements were fraudulent."[86] Accordingly, the Court finds Plaintiff's conspiracy to defraud claim against Defendant Luimon is not substantively meritorious. The Court **DENIES** Plaintiff's motion as to this claim.

### iii. Breach of Contract

Plaintiff alleges Defendant Luimon breached a series of contracts with Assignors, the rights under which have been assigned to Plaintiff. In support of its claim, Plaintiff attaches seventeen invoices detailing orders for seedless lemons to be provided by Assignors to

---

[82] *Id.* ¶ 184.
[83] *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 972 (S.D. Tex. 2010) (citing *Conger v. Danek Med., Inc.*, 27 F.Supp.2d 717, 721–22 (N.D.Tex.1998)).
[84] *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.").
[85] *Russell Energy, Inc.*, No. 1:18CV89-LG-RHW, 2018 WL 3876586, at *1 (S.D. Miss. Aug. 15, 2018) (citing *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 (5th Cir. 2009)).
[86] *Id.*

Defendant Luimon,[87] sixteen phytosanitary certificates, and one bill of lading detailing the shipment of lemons corresponding with all seventeen invoices.[88] Plaintiff also attaches the Declaration of Mr. Camacho, and the Declaration of Assignors, both confirming the existence of seventeen contracts between the parties as to the lemons and the total principal amount unpaid by Defendants.[89] Finally, Plaintiff provides an email conversation taking place in June and July 2017, wherein Defendant Alfredo Velazquez admits that Defendant Luimon owes a payment to Assignors.[90]

The email is one of many in a conversation between Machuca and Defendant Alfredo Velazquez, apparently acting on behalf of Defendant Luimon through a company email address.[91] The conversation details an attempted payment plan between the parties.[92] In an email to Defendant Alfredo Velazquez and Defendant Luimon, Machuca states, "[W]e're not getting the payment and it's looking like you don't want to pay!"[93] In response, Defendant Alfredo Velazquez states, "The transference didn't go through because they didn't accept some checks and there was no money left. If the checks get accepted by today or tomorrow, you will have the deposit by Thursday or Friday."[94] On July 18, 2017, Defendant Alfredo Velazquez then penned a

---

[87] Dkt. No. 25-2 pp. 33–49.

[88] *Id.* at pp. 50–67. Plaintiff's attachments detail shipments of "citrus latifolia" and "fresh limes" ranging from January 2017 to March 2017. Plaintiff provides no explanation for why the phytosanitary certificates name limes instead of lemons. Given that the dates correspond with Plaintiff's invoices and are in fact shipments to Defendant Luimon, the Court will accept these certificates and the bill of lading as evidence of Plaintiff's performance under the contracts.

[89] Dkt. No. 25-1 pp. 2–6, Declaration of Luis Camacho, Exhibit A ("The Assignments, including each of the exhibits thereto, are attached as Exhibit A-1 to this declaration. The total of 17 produce sales transactions that are reflected on the two "Exhibit A" documents attached to the Assignments are referred to collectively herein as "the Transactions"); Dkt. No. 25-2 pp. 1–6, Declaration of Assignors ("I and Tepanapa entered into 17 distinct produce transactions under which I or Tepanapa (as applicable) agreed to sell the Produce and Company agreed to purchase the Produce.").

[90] Dkt. No. 25-2 p. 75.

[91] *Id.* at pp. 73–76. Defendant Alfredo Velazquez's email address is "alfredov@luimonproduce.com," evidencing his representation of Defendant Luimon.

[92] *See id.*

[93] *Id.* at p. 74.

[94] *Id.* at p. 75.

final email to Machuca attempting to set up a payment plan, stating "[W]e will have to [e]stablish a weekly ONU payment of $25.000,00 Mexican pesos each Thursday . . . [a]ctual balance to be determined."[95] Thus, Plaintiff argues the emails, when considered with the invoices and declarations by Assignors, provide proof that Defendant Luimon breached its contract with Assignors.

The elements of a breach of contract claim in Texas include: "(1) the existence of a valid contract; (2) performance by plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach."[96] Plaintiff bears the burden of demonstrating it suffered a loss resulting from the breach.[97]

The Court finds that the seventeen invoices, sworn statements of the parties involved, and the attached emails show the existence of seventeen valid contracts between Assignors and Defendant Luimon. Because Plaintiff was assigned the rights to payment under these contracts,[98] the Court finds there are essentially seventeen valid contracts between Plaintiff and Defendant Luimon. Plaintiff also submits evidence sufficient to prove the remaining elements of a breach of contract claim: Plaintiff's, or in this case, Assignors' performance by shipment; Defendant Luimon's breach by failure to pay; and Plaintiff's suffering of damages. Accordingly, Plaintiff has established all elements of its breach of contract claim against Defendant Luimon. The Court finds that Plaintiff's breach of contract claim against Defendant Luimon is substantively

---

[95] *Id.* at p. 73. In this email, Defendant Alfredo Velazquez states, "Given your haste we will have to stablish [sic] a weekly ONU payment of $25.000,00 Mexican pesos each Thursday starting April 20 of 2017. Actual balance to be determined. I am up to date in orders FOR ANY clarification or extension to the present." Plaintiff offers no explanation for why in an email dated July 18, 2017, Defendant Alfredo Velazquez suggests beginning a payment plan on "April 20 of 2017." Because the invoices are dated in the spring of 2017, the Court can only assume Defendant Alfredo Velazquez was referring to previous payments that were either paid or unpaid on invoices in April 2017.
[96] *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).
[97] *Taub v. Hous. Pipeline Co.*, 75 S.W.3d 606, 616 (Tex. App. 2002).
[98] Dkt. No. 1-1 pp. 12–17.

meritorious as to make default judgment appropriate. The Court **GRANTS** Plaintiff's motion as to this claim.

The Court now considers whether Plaintiff's claims against Defendant Alfredo Velazquez are substantively meritorious.

### b. Claims Against Defendant Alfredo Velazquez

The Court has found in this order that Plaintiff's breach of contract claim against Defendant Luimon is substantively meritorious as to make default judgment appropriate. The Court now considers whether Plaintiff's claim of "alter ego, single enterprise liability" against Defendant Alfredo Velazquez is substantively meritorious as to make Defendant Alfredo Velazquez liable for Plaintiff's losses resulting from Defendant Luimon's breach of contract.

### i. Alter Ego and Single Enterprise Liability

Plaintiff titles its claim against Defendant Alfredo Velazquez as "Alter Ego, Single Enterprise Liability."[99] Plaintiff appears to bring one single claim in order to hold Defendant Alfredo Velazquez liable but bases his liability on two separate legal doctrines: the alter ego theory and the "single business enterprise" theory. Plaintiff cites to no statute or case law supporting its claim or clarifying which theory it utilizes to allege liability – alter ego or single *business* enterprise. These two theories of liability are distinct under Texas law,[100] therefore, the Court will address them individually. The Court first turns to Plaintiff's "single enterprise liability" theory.

---

[99] *Id.* at p. 20.
[100] *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) ("Many Texas cases have blurred the distinction between alter ego and the other bases for disregarding the corporate fiction and treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction . . . alter ego is only one of the bases for disregarding the corporate fiction: "where a corporation is organized and operated as a mere tool or business conduit of another corporation.").

### 1. Single Enterprise Liability

Plaintiff argues only that Defendant Alfredo Velazquez and Defendant Sebastian Velazquez "combine with [Defendant] Luimon to constitute a single enterprise, all under the direction and control of [Defendants Alfredo Velazquez and Sebastian Velazquez]."[101]

The use of the single business enterprise theory "would pierce the veil 'when two or more corporations associate together and, rather than operate as separate entities, integrate their resources to achieve a common business purpose.'"[102] According to this theory, the conduct of a corporate subsidiary may be imputed to the parent corporation.[103]

However, the Texas Supreme Court has never endorsed a theory of single business enterprise liability,[104] which Plaintiff may have known had it cited to any law in support of its claim in any of its pleadings. Even so, the theory of single business enterprise liability would require that Defendant Alfredo Velazquez, an employee of Defendant Luimon, be an actual corporate subsidiary of Defendant Luimon. Defendant Alfredo Velazquez is not a corporate subsidiary of Defendant Luimon. Therefore, even if this theory was one endorsed in the State of Texas, Plaintiff could not hold Defendant Alfredo Velazquez liable for the actions of Defendant Luimon pursuant to this theory. Accordingly, the Court finds this claim does not have substantive merit. The Court now turns to Plaintiff's alter ego theory.

### 2. Alter Ego

In support of its argument that Defendant Alfredo Velazquez is an alter ego of Defendant Luimon that "is liable for [Defendant] Luimon's debts,"[105] Plaintiff alleges the following. First,

---

[101] Dkt. No. 1 p. 20 ¶ 146.
[102] *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 348 (5th Cir. 2015) (citing *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex.2003).
[103] *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007).
[104] *Id.* ("Here, the court of appeals held that Province and Minden operated as a single business enterprise—a theory we have never endorsed—and, therefore, Province's Texas contacts could be imputed to Minden.").
[105] Dkt. No. 1 pp. 21–22, ¶ 160.

Plaintiff alleges in its complaint that Defendant Alfredo Velazquez, "by his complete exercise of dominion and control over [Defendant] Luimon . . . is an alter ego of [Defendant] Luimon."[106] Plaintiff alleges that Defendant Alfredo Velazquez, "acts as president of [Defendant] Luimon," "is listed as [Defendant] Luimon's organizer and managing member and registered agent on the business organizations database on the Texas Secretary of State website," "and was listed as a principal on [Defendant] Luimon's PACA license."[107] Plaintiff also alleges that Defendant Alfredo Velazquez "disregarded the separate corporate entity of [Defendant] Luimon when conducting his business affairs,"[108] and "disregarded [Defendant] Luimon's corporate form so as to make it a mere sham or business conduit to serve his own personal interests and siphon [Defendant Luimon's] assets away from creditors of [Defendant] Luimon."[109] Plaintiff further alleges Defendant Alfredo Velazquez "commingled and confused properties, records, ad (sic) control of [Defendant] Luimon on an interchangeable or joint basis,"[110] and made all major decisions for Defendant Luimon as "one united entity in furtherance of his own aims and interests."[111]

Where a corporation is "organized and operated as a mere tool or business conduit" for another individual, the alter ego theory provides a basis for disregarding corporate form and holding an individual liable for the corporation's actions.[112] To determine whether an alter ego relationship exists, courts focus on, "the relationship between the corporation and the entity or individual that allegedly abused corporate formalities."[113] Courts consider the following factors to determine whether the individual has abused corporate formalities: "the total dealings of the

---

[106] *Id.* at p. 20, ¶ 145.
[107] *Id.* at p. 3, ¶ 5(b)(i–iii) (citing Dkt. No. 1-1 pp. 2–6).
[108] *Id.* at p. 20, ¶ 148.
[109] *Id.* at pp. 20–21, ¶ 150.
[110] *Id.* at p. 21, ¶ 151.
[111] *Id.* ¶ 154.
[112] *See Castleberry*, 721 S.W.2d at 272.
[113] *Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 245 (5th Cir. 1990) (citing *Castleberry*, 721 S.W.2d at 272).

corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."[114]

The Court finds Plaintiff does not plead facts sufficient to suggest that Defendant Alfredo Velazquez abused corporate formalities to make him an alter ego of Defendant Luimon. Plaintiff attaches evidence of Defendant Alfredo Velazquez's role as President of Defendant Luimon[115] and emails evidencing Defendant Alfredo Velazquez's dealings with Assignors.[116] However, there is no evidence on the record suggesting that Defendant Alfredo Velazquez commingled individual property that should have been kept separate, had any sort of ownership interest in the company, or that he used the corporation for personal purposes.[117] The mere fact that Defendant Luimon did not pay Plaintiff the amount owed under the contracts, and the fact that Defendant Alfredo Velazquez appears to have been the point of contact between Defendant Luimon and Assignors does not make Defendant Alfredo Velazquez an alter ego of Defendant Luimon. Accordingly, Plaintiff's claim of alter ego liability as to Defendant Alfredo Velazquez is not substantively meritorious and default judgment is not appropriate. The Court **DENIES** Plaintiff's motion as to its "alter ego, single enterprise liability" claim.

*ii. Conspiracy to Defraud*

As it did with Defendant Luimon, Plaintiff alleges that Defendant Alfredo Velazquez "willingly and willfully conspired" with Defendant Luimon "to perform the tortious and other

---

[114] *Id.*
[115] Dkt. No. 1-1 p. 3.
[116] Dkt. No. 25-2 pp. 74–75.
[117] *Zahra*, 910 F.2d 240 at 245 (citing *Castleberry*,721 S.W.2d at 272).

wrongful acts and schemes set forth in this Complaint."[118] Plaintiff includes the same sparse arguments in support of its allegation that Defendant Alfredo Velazquez conspired to defraud Plaintiff as it does for Defendant Luimon.

The Court reiterates that to establish a civil conspiracy to defraud, a party "must prove both a civil conspiracy and the underlying fraud."[119] Claims involving fraud require a higher degree of particularity.[120] The Fifth Circuit has held that to prove a conspiracy to defraud, "a party must . . . specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[121]

Again, Plaintiff does not cite to any law regarding this claim and does not specify what "methods" were employed by the Defendants in their conspiracy to defraud Plaintiff. Accordingly, the Court finds that Plaintiff's conspiracy to defraud claim against Defendant Alfredo Velazquez is not substantively meritorious. The Court **DENIES** Plaintiff's motion as to this claim.

The Court now turns to Plaintiff's breach of fiduciary duty claim against Defendant Alfredo Velazquez.

### iii.   Breach of Fiduciary Duty

Plaintiff alleges that Defendant Alfredo Velazquez breached its fiduciary duty to Plaintiff because,  "[o]n or before January 1, 2017, [Defendant Alfredo Velazquez] knew or should have known that [Defendant] Luimon was insolvent or otherwise experiencing severe financial distress."[122] On this basis, Plaintiff argues Defendant Alfredo Velazquez owed "a fiduciary duty

---

[118] Dkt. No. 1 p. 24, ¶ 182.
[119] *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 972 (S.D. Tex. 2010) (citing *Conger v. Danek Med., Inc.*, 27 F.Supp.2d 717, 721–22 (N.D.Tex.1998)).
[120] *See Williams*, 112 F.3d at 177.
[121] *Russell Energy, Inc.*, No. 1:18CV89-LG-RHW at *1 (citing *Flaherty*, 565 F.3d at 206).
[122] Dkt. No. 1 p. 18, ¶ 131.

to [Defendant] Luimon's creditors to preserve and maximize the value and availability of [Defendant] Luimon's assets for them from the point of [Defendant] Luimon's insolvency."[123] Plaintiff alleges Defendant Alfredo Velazquez breached this duty by "transferring [Defendant Luimon's] assets, or otherwise allowing the transfer of [Defendant Luimon's] assets, in such a manner as to remove said assets from the reach of [Defendant] Luimon's creditors."[124] Finally, Plaintiff alleges this breach resulted in Plaintiff incurring damages in the amount of the unpaid invoices.[125]

The elements of a breach of fiduciary duty claim include: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."[126] PACA imposes fiduciary duties on the buyer of produce.[127] These fiduciary duties include paying produce suppliers the full payment of their PACA claim.[128] Where an officer of a dealer is in the position to control PACA trust assets and fails to preserve those assets on behalf of unpaid suppliers, the Fifth Circuit has held that this constitutes a breach of fiduciary duty.[129]

As the Court has outlined above, neither Plaintiff nor Assignors provided Defendants with adequate notice entitling Plaintiff to recover under PACA. Thus, even if Defendant Alfredo Velazquez breached his fiduciary duty to preserve PACA trust assets, Plaintiff has not satisfied the notice requirement enabling it to recover on this basis. Plaintiff is once again aware of its inability to recover utilizing this argument. The Northern District of Texas dismissed all of

---

[123] *Id.* ¶ 132.
[124] *Id.* at p. 19, ¶ 136.
[125] *Id.* at p. 20, ¶ 142.
[126] *Navigant Consulting, Inc*, 508 F.3d at 283.
[127] *In re Delta Produce*, 521 B.R. at 593.
[128] *Id.* (citing *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001)).
[129] *See Golman-Hayden Co.*, 217 F.3d at 351 (concluding that the owner and sole shareholder of a corporate dealer breached his fiduciary duty to the plaintiff supplier where he refused or failed to "exercise any appreciable oversight of the corporation's management" to preserve the trust assets).

Plaintiff's PACA claims for failure to provide adequate notice in *Paisano Capital SA de CV v. 23 Texas Produce, Inc.*, including Plaintiff's claim of breach of fiduciary duty by the defendant's officers.[130]

Accordingly, the Court **DENIES** default judgment as Plaintiff's breach of fiduciary duty claim against Defendant Alfredo Velazquez.

    *iv.  Aiding and Abetting Defendant Luimon's Breach of Fiduciary Duty*

Plaintiff alleges Defendant Alfredo Velazquez aided and abetted Defendant Luimon's breach of fiduciary duty by "knowingly provid[ing] substantial assistance and encouragement to the directors, members, and officers of [Defendant] Luimon in their breaches of their fiduciary duties and duties under PACA."[131] Plaintiff also alleges Defendant Alfredo Velazquez aided and abetted Defendant Luimon's breach by "collectively making partial payments for the improper purpose of inducing Plaintiff to forestall actions for collection and managing cash and financial accounting methods designed to remove assets from the reach of [Defendant Luimon's] creditors."[132]

To bring an aiding and abetting claim under Texas law, a plaintiff must prove that a defendant acted with unlawful intent to give substantial assistance and encouragement to a wrongdoer in a tortious act.[133] A defendant's liability for aiding and abetting depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable.[134] Thus, to prove that a defendant aided and abetted another's breach of fiduciary duty, a plaintiff

---

[130] *Paisano Capital SA de CV v. 23 Texas Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *4 (N.D. Tex. July 18, 2019).
[131] Dkt. No. 1 p. 26, ¶ 190.
[132] *Id.*
[133] *PrevMED, Inc. v. MNM-1997, Inc.*, No. CV H-15-2856, 2017 WL 785656, at *12 (S.D. Tex. Feb. 28, 2017) (citing *West Fork Advisors, L.L.C. v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied).
[134] *Id.*

must prove (1) the underlying breach of fiduciary duty; and (2) that the defendant acted with unlawful intent to give substantial assistance and encouragement to the person or entity that breached its fiduciary duty.

The Court finds Plaintiff's claim is not substantively meritorious. PACA imposes fiduciary duties on the buyer of produce to pay produce suppliers.[135] Plaintiff offers evidence that Defendant Luimon failed to pay Assignors the amount owed for the purchased produce.[136] However, because Plaintiff did not provide adequate notice under PACA, Plaintiff has not pled facts sufficient to prove the underlying breach of fiduciary duty by Defendant Luimon. Thus, Plaintiff cannot prove that Defendant Alfredo Velazquez aided and abetted Defendant Luimon's breach of fiduciary duty. The Court hereby **DENIES** default judgment as to Plaintiff's claim against Defendant Alfredo Velazquez.

### iii. Requested Relief

Finally, the Court is able to determine whether the requested relief is appropriate[137] pursuant to Rule 54(c). Rule 54(c) dictates that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[138]

Plaintiff requests damages of $133,968.97, which includes (1) $92,532.69 unpaid under the invoices; (2) $14,357.99 in interest; and (3) $27,078.29 in attorneys' fees and costs. The Court finds Plaintiff's request for $92,532.69 warranted, as this amount corresponds with the

---

[135] *In re Delta Produce*, 521 B.R. at 593.
[136] *Id.* (citing *C.H. Robinson Co.*, 239 F.3d at 488).
[137] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[138] Fed. R. Civ. P. 54(c).

declarations of Mr. Camacho[139] and Assignors,[140] as well as the amount owed on the invoices themselves.[141] Thus, the Court **AWARDS** Plaintiff $92,532.69.

### 1. *Pre-Judgment Interest*

The Court finds Plaintiff's request for $14,357.99 in pre-judgment is not supported by the evidence. Plaintiff requests six percent of $92,539.69 annually from the date of April 10, 2017, twelve days after the last invoice.[142] Plaintiff cites to Texas Finance Code § 302.002, providing that "[i]f a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due."

The Texas Supreme Court has recognized two bases for the award of pre-judgment interest: (1) an enabling statute, such as the one cited by Plaintiff; and (2) general principles of equity.[143] Here, the enabling statute utilized by Plaintiff applies only to pre-judgment interest awarded in wrongful death, personal injury, and property damage cases.[144] In a breach of contract claim where the enabling statute is inapplicable, the Fifth Circuit has held that Texas common law sets the pre-judgment interest rate at the same rate as the post-judgment interest

---

[139] Dkt. No. 25-1 p. 4, ¶ 10.

[140] Dkt. No. 25-2 pp. 4–5, ¶¶ 12, 16. While Assignors do not specifically state that $92,532.69 is owed, they state that Defendants have paid $221,221.40 towards $313,754.09 owed under the contracts, leaving $92,539.69 unpaid.

[141] Dkt. No. 25-2 pp. 33–49. The invoices provide that Plaintiff was owed a total of $6,166,146.42 Mexican Pesos. Plaintiff utilizes an exchange rate of $19.6528 / dollar, which is the average exchange rate for the period when payments were due (January 3, 2017 through April 10, 2017). This leaves $313,754.09 owed under the invoices. Plaintiff claims Defendants have paid $221,221.40 towards the amount owed, leaving $92,539.69 unpaid. Dkt. No. 25 p. 4, ¶ 13.

[142] Dkt. No. 25 p. 14.

[143] *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002).

[144] *Paisano Capital*, No. 3:19-CV-0852-B at *5 (citing Tex. Fin. Code §§ 304.101–103). The Court expects that Plaintiff was well aware of the Texas Finance Code's inapplicability to a breach of contract case such as this, considering that another Fifth Circuit Court has already clarified this issue in an opinion concerning other produce contracts entered into by Plaintiff. *Paisano Capital*, No. 3:19-CV-0852-B at *5.

rate.[145] As there is no statute enabling pre-judgment interest for a breach of contract claim, the Court finds it appropriate to set the pre-judgment interest rate at the post-judgment interest rate.[146] Pre-judgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed.[147]

Currently, the post-judgment interest rate is 1.59%.[148] Here, interest began to accrue 180 days after Defendants received written notice of the claim. The Court finds Defendants received written notice of a breach of contract claim against them on June 28, 2017.[149] Pre-judgment interest began to accrue 180 days after this date on December 25, 2017. Accordingly, Plaintiff is entitled to pre-judgment interest in the amount of $2,862.14.[150]

---

[145] *See Int'l Turbine Services*, 278 F.3d at 500 ("Texas common law allows prejudgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract.") (citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998)).

[146] In *Johnson*, the Supreme Court of Texas held that where a state enabling statute does not apply to a particular claim, "prejudgment interest accrues at the rate for postjudgment interest and it shall be computed as simple interest." *Johnson*, 962 S.W.2d at 532. The Texas Supreme Court utilized the post-judgment interest rate and the enabling statute's calculation of interest. According to the calculation, "prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Id.* In *Int'l Turbine Services*, the Fifth Circuit agreed with the *Johnson* Court, holding that in a breach of contract case where an enabling statute is not applicable, the pre-judgment interest rate should be the same as the post-judgment interest rate. *Int'l Turbine Services*, 278 F.3d at 500. In contrast, in its July 2019 decision involving the instant Plaintiff, the Northern District of Texas applied *Johnson* and adopted the enabling statute interest rate provided by Plaintiff. *Paisano Capital*, No. 3:19-CV-0852-B at *5. Applying general principles of equity, this Court adopts the finding of the Texas Supreme Court in *Johnson* and the Fifth Circuit in *Int'l Turbine*. The pre-judgment interest rate shall be set at the post-judgment interest rate and shall begin to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed.

[147] *Johnson*, 962 S.W.2d at 529.

[148] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited 11/23/2019).

[149] Plaintiff requests that pre-judgment interest be calculated from April 10, 2017, twelve days after the date of the last invoice, dated March 29, 2017. Dkt. No. 25 p. 4, ¶ 11. The only evidence provided by Plaintiff showing Defendants' written notice of a claim prior to the filing of a complaint is the June 2017 email conversation, wherein Machuca notifies Defendant Alfredo Velazquez that an amount is still owed to Assignors. Dkt. No. 25-2 pp. 73–76. Accordingly, the Court will consider June 28, 2017 the earliest definitive date on which Defendants had notice of their breach of contract.

[150] 1.59 percent of $92,539.69 is $1,471.38. Because the pre-judgment interest accrues annually, Plaintiff is entitled to $1,471.38 for the interest accrued from December 25, 2017 to December 25, 2018. Pre-judgment interest accrues at approximately $4.03 per day. Therefore, Plaintiff is entitled to $1,390.76 for the pre-judgment interest accrued from December 26, 2018 to December 6, 2019. In sum, Plaintiff is entitled to $2,862.14 in pre-judgment interest.

### 2.  *Attorneys' Fees*

Finally, the Court is unable to determine whether Plaintiff's request for attorneys' costs and fees is reasonable and appropriate. It appears Plaintiff had two firms working on different matters related to this case: Wallace, Jordan, Ratliff & Brandt, LLC of Birmingham, Alabama and Taylor & Thuss of Austin, Texas.[151] Plaintiff haphazardly attaches the invoices for its legal services, which in sum, equal $30,395.18.[152] However, Plaintiff requests $27,078.29 in attorneys' fees and costs. Plaintiff does not provide an explanation for this discrepancy or an hourly rate by which this Court can judge whether the costs and fees are reasonable. Additionally, the Court has concern about the quality of the work performed as outlined in this opinion. The Court hereby instructs Plaintiff to present sufficient evidence of attorneys' fees and costs by affidavit pursuant to Rule 54(d) following a final judgment by this Court.[153] Plaintiff is instructed to include: (1) the name of each attorney; (2) the number of hours they billed; (3) the hourly rate billed; (4) the work done; and (5) each attorney's number of years of experience.

In sum, the Court finds Plaintiff is entitled to the relief requested for its breach of contract claim, totaling $95,401.83 in damages and interest. Plaintiff is also entitled to attorneys' fees but must present evidence of costs and fees in accordance with the aforementioned instructions.

## V.    HOLDING

The Court hereby **STRIKES** Plaintiff's proposed amended complaint[154] and **DISMISSES WITHOUT PREJUDICE** Defendant Sebastian Velazquez. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment.[155]

---

[151] *See* Dkt. No. 25-1 pp. 40–60.
[152] *Id.*
[153] Fed. R. Civ. P. 54(d) provides that a claim for attorney's fees and related nontaxable expenses must be made by motion within 14 days after the entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the movant to the award; and must state the amount sought or provide a fair estimate of it.
[154] Dkt. No. 24.
[155] Dkt. No. 25.

Specifically, the Court **GRANTS** Plaintiff's motion for default judgment as to the breach of contract claim against Defendant Luimon. The Court **DENIES** Plaintiff's motion for default judgment as to all remaining claims against Defendants. The Court **AWARDS** Plaintiff $95,401.83, plus post-judgment interest at a rate of **1.59%** from the date of this Order.[156]

The Court further **ORDERS** Plaintiff to advise the Court by **Friday, January 10, 2020** as to whether it will further pursue its PACA claims. In light of the aforementioned, the Court **CANCELS** the parties' December 17, 2019 status conference.[157]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 6th day of December, 2019.

_____
Micaela Alvarez
United States District Judge

---

[156] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited 12/6/2019).

[157] Dkt. No. 23.